Thank you. Good morning, Your Honors. William Osterhout. I represent the petitioner and appellate in this case, William New. Two issues are raised in the appeal. One is based on the due process problem of delay for 32 years before he was charged with the murder of his first wife. The second is whether due process and fairness, fundamental fairness was violated by trying that case together with the 2004 case involving his third wife, Phyllis. With the court's permission, I think that I would like to discuss the delay briefly and respond to questions you may have on that. What I believe that the courts, I respectfully disagree with, the California Court of Appeal and the court below, in believing that Phyllis's death by violence in 2004 justified the delay that preceded it for 32 years. I do not believe that that can be. Well, our task here is on habeas review. So whether we agree or disagree with the state court doesn't matter. We have to determine that the state court's determination was unreasonable. So could you explain to us why that determination was unreasonable? Yes, Your Honor. I believe it was an unreasonable application of settled Federal constitutional law because the state court determined that the – that the – even though, as it said, Mr. New suffered prejudice, everybody has agreed to that as a result of this long delay when the coroner was lost and the pathologist was lost, that nonetheless, it was justified. And then applying Lobasco and applying Marion and the various due process delay tests, the state court determined that it was all right, basically, because the delay, though prejudicial, was justified. Did the California courts misstate the law? In one respect, it did, but I don't think it's – it may not be germane. The court felt that to prevail in a Federal case, the defendant would have to show that the delay was, in bad faith, intentional to gain – Isn't there a split in the circuits over that? Yes, there is, Your Honor. But this Court has held that – Right. But we're not the Supreme Court, and doesn't that require us to follow the clearly established Supreme Court law? Yes, Your Honor. But in Lobasco, the Supreme Court did not make that a requirement when it said that due process would be violated. Right. But we have something like ten circuits that have held the other way. That would suggest that it's not clearly established in the Supreme Court. If the Ninth Circuit is on one side and we have some ten circuits that have decided to be the contrary way, that suggests that it's anything but clear. Well, I appreciate that point, Your Honor. I didn't realize it was that many. I know the Fourth Circuit has agreed with the Ninth Circuit, I believe on this point, that that's not required. I would argue, though, respectfully, that Lobasco did not require it, and I don't think we should read it in to that decision. So I think it's not part of constitutional Federal law. The defendant has to prove that. If it were, it really could never be done. We wouldn't have – you can never really prove that. If you did prove bad faith, that would close the case. You could never have a justifiable delay. I don't know whether you were trial counsel below or on appeal in the California  Did you take – did you take cert in this case? Did you file for cert? I was not counsel, Your Honor, but I believe – I believe cert was – I'm sorry. I believe cert was taken in this case. I believe there was a request. This point, though, is not central, I think, to the argument, because to reach it – I mean, these courts held that it was simply justified. It was simply justified by the – The standard itself would have been important, and since there's a split in the circuits, this might have been – this might have been an easy case for seeking review in the Supreme Court. And the standard, if you can get – cert's hard to get, but once you get it, the standard of review on direct review of the criminal appeal in California would have been a whole lot easier than getting AEDPA review in our court. Well, I agree with you, and I don't know whether my adversary can answer that question. I apologize. I'm not sure in what form cert was taken. I believe it was taken from the – from the California Supreme Court's denial of – without comment, of course, of the request for hearing. I'm not sure what form certiorari was taken. So I understand your point, Judge Ivey. I do respectfully urge that, based on Lovasco, I think that's not a requirement, and I have to stand on that position that – What's not a requirement? That the defendant prove bad faith. Oh, okay. To prevail. And, you know, I think that in this case, the – if I could – if I could emphasize this, I think the prejudice was very great because of the – a long period of delay. Dr. Root and Dr. Reyes, the coroner and the pathologist, were dead. The house was practically gone. It had been damaged by fire. Loveseat, Somerset he knew was resting on, was missing. The gun was gone. The statement of the defendant that he made at the time to police was – had been discarded and was gone. The ammunition that was found was not there. And the reconstruction that was created I don't think could ever substitute for the testimony of the people who conducted that investigation. And there was prejudice. And nobody says there wasn't, really. I think the question is whether that prejudice was justified. And if it was, then, you know, then on balance you don't, you know, dismiss. But the justification offered was that Phyllis was murdered. Phyllis New was murdered in 2004. And it wasn't – even the respondent, even the attorney general in argument in its briefing in the court of appeal didn't make that position. That arose from the court spontaneously. Nobody said that Phyllis's death was the justification. The court of appeal asked for supplemental briefing itself on that point. It hadn't apparently occurred to the attorney general at that point to make that argument. And the reason, I think, is because it's not a strong argument when one thinks about it. All the evidence that was used to reconstruct, and I have Dr. Mateo and the other expert opine, all of that was available all the time. It wasn't – they simply didn't investigate any longer. They could have done it at any time. They didn't do it. It was inaction. In Lovasco and in other cases where, you know, this argument has been rejected, in all of those cases the investigation was ongoing. Because of that, they said it was justified. In Lovasco itself, they were still investigating. But then you have California cases like Hartman, which I think is very similar, where what happened there was there was a death. It was ruled to be a heart problem that did it, but the defendant was found to have credit cards and other identification of the deceased, and so he fell under suspicion. It was ruled to be a medical death. Seven years later, because of pressure by the widow of the deceased and other things, they brought a case. And the court said it was prejudicial because the coroner had died, the person who ruled. The heart had been emasculated by time. The internal organs were no longer valuable to look at. There were medical records, but that wasn't good enough. And so the court held that there was prejudice and there was not justification. Here, there was no justification. And this, I think, is so central to this argument that I would respectfully place before you. What Phyllis's death did is obviously spur interest and cause this to be dredged up again. But that doesn't mean it caused the delay. It's not a justification for the delay that preceded it. All of the testimony by these experts was available all that time. They could have reconstructed it at any time. So I think that what we have is not a justification. And we have really overwhelming prejudice because of the loss of all these very vital things. And so I think that argument, I think, is a proper argument. And he was denied fairness because of it. It wasn't fair. Now, was it fair to try the two cases together? It's a greater problem. We cite the Lane case in our briefing, Supreme Court case, suggesting that failure to sever under certain circumstances can violate due process if it implicates fundamental fairness. This Court, I think, and others have said that that was dictum, at least to the extent that it was talking that the Lane Court was talking about severance that was urged on the basis of inconsistent defenses between defendants who were tried together. But I think that the argument is still viable here because where severance, where failure to sever counts, as in this case the two murders widely separated, where that failure implicates fairness and prevents the defendant from getting a fundamentally fair trial, as it did here in my judgment, then I think, you know, the Court should intervene. I mean, what happened here, you know, is not a case, in my judgment, where these cases were one weak and the other strong. I mean, you know, the case against him on the death of his wife, his third wife, Phyllis, when he was out, it was completely different than the first one, which was an accidental gunshot wound cleaning his gun back in 73. In 2004, he went out for some medication for his wife and he came back and found her dead. There was evidence of an intruder. There was a neighborhood burglar who had a habit of entering houses that way and burglarizing, taking things. You know, it was a credible defense. It wasn't a very strong, there was no DNA, there was no fingerprints, there was no gun, no weapon to tie him to it. And the 1973 case was weak for all the reasons we argue, especially in the absence of the evidence about it. But when you tried them together, you did immeasurably increase the strength of both because you invite a kind of an unspoken inference, you know. It's almost like probability analysis. It's almost like odds. If California had separated these trials, would evidence of his first wife's death have been admissible in the death of the second wife? I would argue not. I know you would argue not, but I'm asking whether. There certainly is a reasonable argument that it could have been admitted, right? I think not because of this lack of similarity, fundamental similarity. They're both gunshot wounds to the head of a wife in the evening, all right? But that in itself, I mean, one is clearly, you know, an accident. It appears to be accidental. Clean the gun, it goes off. He did it, no question about it. The other is hotly disputed. He vehemently denies he did it. There's no real other similarity except that they're both his wives and they were both killed. And it's kind of almost kind of an underhanded assumption. Well, he must be guilty of two wives. Somehow this is what he does. And, you know, I mean, somebody said talking about this to me, suppose you had a stadium with 50,000 people at a sports event. You made an announcement, everyone who's had two wives, you know, die from gunshot wounds in their head, you know, step forward and announce. And they're home. And they're home. And you wouldn't get any takers. But that I think is flawed when we're trying to assess whether you can base guilt in a criminal case on it and life sentences. The same kind of reaction might be true if you ask the same crowd, what about, you know, false confessions? Have you made false confessions to things you didn't do? Or have eyewitnesses falsely identified you? Are you familiar with that? There's lots of things that people intuitively think that are not a proper basis for decision in a court of law. That sounds like a jury argument and not an argument for saying that a state court acted unreasonably. Well, it's my argument that they acted unreasonably here because I think that shouldn't have been allowed. That jury determination, that intuitive judgment of guilt should not have been allowed in this case. Same question as I asked you on the delay, on the severance question, what's the Supreme Court case that should have advised California that was making a huge mistake? Well, we – that they violated established law. Right. Well, I think that we cited some cases that we think stand for it. But Lane, I think, we cited, and then this Court, I think, said it was victim, at least to the extent that it dealt with failure to sever because of the inconsistent defenses. Okay. It's not as strong an argument, in my judgment, as the other for that particular reason. Okay. Well, I've got Webasto and Marion on the first point. On the second point, what's the name of the case? What's the case that should have advised California, had it taken a close look at it, that it had made a huge mistake here? The Lane case. The Lane? Lane, yeah. So that's why I think that would be done. And I think that, you know, that they – I think he was denied fundamental rights to due process. If the Court has no further questions, may I reserve a minute or so for it? Yes, you may. Thank you very much. May it please the Court. Peter Kwan on behalf of the appellee in the case. I'd like to address, Justice, by these questions about what Supreme Court cases should be applied in this case. As to the first argument about delay, that would be Lovesco. As far as the second issue in the case, which is a severance, that would be Estelle v. McGuire. And that's a 1991 United States Supreme Court case at 502 U.S. 62. I think it must be significant to this Court's determination about going to the first issue, about the delay. It is significant – I think it should be significant to this Court's determination of that first issue, the fact that what we have here are two different law enforcement agencies. One is San Bernardino Police Department, which investigated the first murder in 1973. And then San Diego DA's Office, or law enforcement, which investigated the third wife's death in 2004. It's significant because during the period of time between 73 and 2004, nothing was done with regard to the investigation in the case, neither. And that's because the San Bernardino Police Department, back in 1973, had decided that this was an accidental shooting. It was only at the time of October 2004, when we have the death of Phyllis New, the third wife, that the San Diego District Attorney's Office and law enforcement agencies started looking into the sons, sorry, the first wife's murder, only because we have a defendant who tells the investigating officers in the third wife's death that his first wife died from a car accident, and then later on admitted that she died of an accidental shooting. It was that event that triggered the investigation by the San Diego DA's Office and law enforcement. That was a triggering event that started development of probable cause. That was the triggering event that started the DA, in the third wife's case, to determine whether or not there was sufficient evidence to prove the defendant's guilt beyond a reasonable doubt. These are all things that Levesque takes into consideration, too, in his determination, in that the timing by which a DA prosecutes a case is something that is not exclusively in control of the district attorney, but certainly should be given some latitude as to determine whether or not that prosecutor can prove, beyond a reasonable doubt, the proof of the defendant's guilt. The delay that Appellant talks about with regard to the resulting prejudice was something that was not a circumstance which prevented him from presenting a reasonable defense in this case. It was prejudicial, and that was a position that was taken by the trial court, also taken by the Court of Appeal, in order to balance out and get to the determination of whether or not there was a justification for the delay. And the delay was – and the justification for the delay was that there was nothing that the DA had, up until the time of Phyllis New's death. That pointed to the Sonsreid's death, the first one, as having been the cause of a criminal act. With regard to the law. Roberts. Does anything turn on the resolution of what appears to be a circuit split on the Lubasco standard? I'm sorry, Your Honor. Well, under Lubasco, the counsel has pointed out that we have held that you do not have to show intentional misconduct on the part of the government. That's the standard, I think, in our circuit and also the Fourth Circuit. There are a number of other circuits that have held that you do not have to show intentional misconduct by the government. Now, there does appear to be a circuit split on that. Does anything in the State's case turn on the resolution of that circuit split? Can you win under the stricter standard? Yes, Your Honor. The State court judgment should be upheld even under the more stricter standard. The determination by the State courts was whether or not the justified delay, whether the was, regardless of whether it was intentional or not, the State courts went to the position of we're going to presume prejudice here anyhow. So it didn't get to the matter of whether or not the prejudice was caused by intentional delay or negligent delay. It was a delay. And yet, with that process, through that process, the State courts, and I think this is where we come with habeas review. Habeas review, the purpose of habeas review under the ADPA is to make sure that there is not a malfunction of the State criminal justice process. It's not to check on minor errors that occur, but rather on the constitutional impact of those errors. So if the standard in our court, if that could be established that that is the standard for Lovasco, then all we have to all Mr. New has to show is that there was some kind of negligence on the part of the State. That burden is not nearly as high as showing intentional misconduct. So can't they show negligence here? Well, that was not even addressed down below in the State court, Your Honor, whether there was negligence or not. It's because both the trial judge and the court of appeal, and presumably through Yale, the California Supreme Court, presumed the delay was prejudicial. Right. Well, prejudice has to be shown. That's one step. And the next step is that you either have to show that there was some kind of negligence on the part of the government, or in some circuits you have to show that there was intentional misconduct on the part of the government. Well. Now, the lesser burden on the defendant is to show that there was just negligence. Can't they show that there was negligence here in the original investigation in 1974? I suppose the argument by appellant would be stronger if the prosecuting agency happened to be the San Bernardino County prosecutors. But that's not the case. What we have are prosecutors that had no handle on the earlier murder, who developed that only after the murder, the second murder occurred in the San Diego County. So how you characterize that, whether it's going to be intentional or negligent, I'm not quite sure that we have a basis by which this court can even reach that based on the facts that are presented. I'm not sure I remember a case or can think of a case in which a prosecution has taken such a long time. And I realize with the murder statute there's no statute of limitations. Is that correct? It seems to me that most of the kinds of cases in which you end up with a 40-year-old murder being solved or something involves some kind of confession, a diary, some kind of irrefutable evidence. We find a murder weapon buried in a box in the closet. And that's not the case here. And do you have any other cases out of California in which a murder this old has been solved sort of based on the evidence that was originally investigated? There really wasn't much new here. We just had other people who took a look at it and said, well, I think he probably shot her from above instead of shooting her from below. And taking a look at the weapon and saying, well, I don't think this is so easily dischargeable. It gets dropped. I tried looking for cases like that. Unfortunately, first of all, with regard to published cases in California, all the cases in California didn't start appearing online until about the 1980s. So any cases that might have been prosecuted prior to the 1980s that had a similar kind of facts as this, we wouldn't have it unless it were a published decision. And as far as those published decisions, I could not find a case similar to this. With regard to the cases after 1980 that can be searched for on Westlaw and Lexis, I could not find another case like this, whether it be published or unpublished. Do you recall whether the defendant sought certiorari review in the Supreme Court? I'm sorry, Your Honor. Do you recall whether the defendant here sought certiorari review in the Supreme Court? When Your Honor asked Appellant about that, I looked in my brief, and that is something I would have normally put into my appellee's brief, whether the issue had been taken up. And I was the attorney that handled the appeal on this case, direct appeal on the state side. And I do both. It is absent from my appellee's brief that a petition for certiorari was taken, and I do not specifically recall seeing a petition for written certiorari to the United States Supreme Court in the progress of this case to this Court. With regard, if I may, if the Court has no further questions on the delay factor, then I would like to make a few comments about the severance factor. And that is simply this, that unlike – contrary to the position of Appellant that the evidence of one would not be cross-admissible to the other, that's not true in California. Under 1101 of the California Evidence Code, there is a graduation of evidence that is allowed from one case to another, depending on what is being used for. In the case of Phyllis, it was a matter of identity and intent. Under California law, the evidence has to be pretty distinctive in order to get to identity and intent. Not so much intent, but most definitely for identity. In Sonseri, the first murder, in California, the level of similarity does not have to be as distinct. Also, we have California law, as this Court is probably aware, that there doesn't have to be distinctiveness to those events either. It's just a matter of is there a pattern that emerges from the events that occur in one to the other. In Sonseri's case, it was intent. It wasn't identity. Intent in California law is the lowest level of proof under Evidence Code 1101 that needs to show similarity. And under here, there is plenty of similarity, as this Court has already noted to appellant counsel. Both women were married to the same man. Both women were killed at night. Both women were killed from a gunshot to the back of the head. Both women had insurance policies that named the defendant. I think that unless the Court has further questions, may I pretty much rely on the matters that are argued in my brief as well as my arguments today. It appears not. Thank you, counsel. Thank you, Your Honor. Pardon? Thank you, Your Honor. In response to Judge Bybee's inquiries about the split of the circuits, I think... Did you say Mr. Bybee? Huh? Did you say Mr. Bybee? Judge. Oh, okay. No, no. I thought I heard Mr. Oh, no, no. Okay. Judge Bybee's comment about that. The foundation, I think, is Marion. You know, we talk about pre-indictment delay, due process delay. And, you know, Lovasco cites to that in his discussion. And Marion, of course, has one of the factors being whether the delay was prejudicial and another whether it's intentional in bad faith. It doesn't require that it be intentional in bad faith. It's a factor. And I think that Lovasco took that law, you know, and basically applied that and restated that in his decision. So I don't think that... I don't think that... I think that Lovasco does not stand for the proposition that one need prove bad faith. The counsel's argument that the death of Phyllis was the only thing that gave them a right to do it is belied by all of the evidence. What was all the evidence about, about reconstructing everything and giving a new slant to it? That had nothing to do with Phyllis. That was always there. Those experts could always have come forward if the state pursued it. They can't use their inaction as justification. And Phyllis's death was not justification. So, Your Honors, with that, I'll submit it. Thank you. Thank you both counsel. The case just argued is submitted for decision by the court.
judges: Timlin, Rawlinson, Bybee